IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FRANCES W. HASKINS, | * | |
| Plaintiff/Counter-Defendant, | * | |
| v. | * | Civil Action No.: RDB 04-2488 |
| J. FRANK BAYLIS, | * | |
| Defendant/Counter-Plaintiff. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Pending before this Court are three motions: Plaintiff Frances W. Haskins' ("Plaintiff" or "Haskins") Motion for Summary Judgment; Defendant J. Frank Baylis' ("Defendant" or "Baylis") Cross-Motion for Summary Judgment; and Defendant's Motion to Strike. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Cross-Motion for Summary Judgment is DENIED, and Defendant's Motion to Strike is DENIED as moot. As a result, this case will proceed to trial without a jury on all counts.

BACKGROUND

**I.     Factual History.**

Baylis is a breeder of Australian Shepherds and other purebred dogs. He recently won the "Best of Breed" award in three breeds and "First" in the herding group at the Westminster Kennel Club dog show at Madison Square Garden in New York City. (*See* Baylis Mem. Supp. Summ. J. p. 7.) Haskins, who has known Baylis on a casual basis since 1970, approached Baylis in 1999 to discuss entering into a cooperative arrangement to raise and exhibit certain dogs. (*Id*.

at 9.) Shortly thereafter, Baylis and Haskins entered into an oral partnership agreement for purposes of breeding and exhibiting dogs that are registered with the American Kennel Club, Inc. ("AKC").[1]

In 2003, a dispute developed between Baylis and Haskins with respect to a dog—named "Fib"—that they co-owned with an individual named Caterina O'Sullivan ("O'Sullivan"). Baylis contends that he authorized Haskins to offer $1,000 to O'Sullivan to buy out her undivided one-third interest in Fib. (*See* Baylis Mem. Supp. Summ. J. p. 12.) In early 2004, however, Haskins paid O'Sullivan $2,500 for her interest in Fib. (*Id.*) Baylis was angry when he learned that Haskins did not comply with his instructions. (*Id.*) Baylis told Haskins that he would no longer participate in their cooperative arrangement and demanded the return of all dogs that they co-owned. (*Id.*) Haskins refused to return the dogs unless Baylis reimbursed her for money that she spent on the dogs. (*Id.*)

On March 15, 2004, Haskins wrote a letter to Baylis providing that:

> What I see from here is a person that is not happy, who has no peace at all in his life . . . strained, to the point of breaking, relationships with the people closest to you. You've achieved great success but often feel no satisfaction. You seem so afraid of being betrayed, you set up impossible tests for those of us that love you and make sure we fail in your eyes. You try to control your relationships with fear rather than respect and love. You refuse to take responsibility for your role in problem relationships, most of which are defined by conflict. It breaks my heart to see you self-destruct. I've known you for 30 years. I love you and wish you would sit down and think about where you are right now. I truly believe "once an addict always an addict", because I am one. I know that you have just substituted prescription drugs for alcohol. You were in AA long

---

[1] (*See* Haskins Compl. ¶ 1 ("[T]he parties formed a partnership for profit relative to dogs that they co-own in Cecil County, Maryland."); Baylis Am. Counter-Compl. ¶ 35 ("Baylis and Haskins entered into a partnership agreement in approximately 1999 to breed purebred, American Kennel Club registered Australian Shepherd dogs; and to exhibit them at American Kennel Club events.").

2

> enough to know that the end result of an untreated addiction is death or prison — a lonely prison of your own making. . . . I'm scared you're killing yourself, destroying everything of value in the process. If I didn't care about you, this letter would only be about the dogs. Right now my biggest concern is you. Bottom line — admitting the pills are a problem and your life is unmanageable is the first step.

(Haskins Mem. Supp. Summ. J., attached as unmarked exhibit, pp. 1-2.) The letter was written on University of Delaware, Department of Psychology letterhead. (*Id*.) Haskins does not dispute that she disclosed the contents of this letter to Jeff Margeson, Chris Dale, Debbie Mills, Peggy Faith, and Chris Strom. (*Id*. at 1.) Three of these individuals—Jeff Margeson, Chris Dale, and Debbie Mills—were Baylis' friends. (*See* Baylis Mem. Supp. Summ. J. p. 14.) Baylis considers Peggy Faith to be an "avowed enemy." (*Id*.) Finally, Chris Strom is an AKC employee and friend of Haskins. (*Id*.; *see also* Haskins Mem. Supp. Summ. J. p. 2.)

In mid-2004, Baylis contends that he discovered that Haskins had forged his signature on certain official AKC documents. (*See* Baylis Mem. Supp. Summ. J. p. 16.) After investigating this matter, the AKC suspended Haskins' ability to exercise registration privileges for a period of three months and fined Haskins $500. (*Id*. at 17.) The suspension was published in the March 2005 issue of the AKC Gazette. (*Id*. at Ex. 26.) As a result, Haskins was also suspended from the Australian Shepherd Association. (*Id*. at p. 17.)

## II.     Procedural History.

On May 25, 2004, Haskins filed a complaint against Baylis and the AKC in the Circuit Court for Cecil County, Maryland. (*See* Removal Notice ¶ 2.) On July 27, 2004, Baylis filed a Notice of Removal that purported to remove the action to this Court. (*Id*.) The case was assigned Civil Action No. 04-2488. On August 8, 2004, Baylis initiated a separate action in this Court by filing a complaint against Haskins and the University of Delaware, Newark, Delaware ("University of Delaware"). On November 11, 2004, this case—Civil Action No. 04-2555—was

reassigned to Judge Andre M. Davis.  On January 10, 2005, Judge Davis granted in part the University of Delaware's unopposed Motion to Dismiss or Transfer Venue and transferred the action to the United States District Court for the District of Delaware.  On January 3, 2005, this Court granted the AKC's unopposed Motion for Summary Judgment.  On January 11, 2005, Judge Davis denied the parties' Joint Motion to Withdraw this Court's order transferring this action.  On February 4, 2005, Baylis voluntarily dismissed his claims against the University of Delaware.  (*See* Paper No. 19.)  On February 28, 2005, the United States District Court for the District of Delaware transferred this action back to this Court, where the case was reassigned to the undersigned Judge of this Court.  (*See* Paper No. 20.)

On February 28, 2005, this Court consolidated the civil actions described above pursuant to Fed. R. Civ. P. 42, and ordered that all future pleadings be filed under Civil Action No. 04-2488.  On May 25, 2005, this Court granted Baylis' Motion to Amend Complaint.[2]  On October 31, 2005, Haskins filed a Motion for Summary Judgment.  (*See* Paper No. 50.)  On November 28, 2005, Baylis filed a Cross-Motion for Summary Judgment.  (*See* Paper No. 52.)  On January 11, 2006, Baylis filed a Motion to Strike.  (*See* Paper No. 59.)  The parties have consented to a trial without a jury.  (*See* Paper No. 23; Paper No. 48 ¶ D.)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added).  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court

---

[2] Haskins does not appear to have filed an Answer to Baylis' Amended Complaint.

explained that only "facts that might affect the outcome of the suit under the governing law" are material. *Id*. at 248.  Moreover, a dispute over a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  The Court further explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249.  In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

When both parties file motions for summary judgment, as here, the court applies the same standards of review. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment – even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*, 469 U.S. 1215 (1985).  The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 325 (10th Cir. 1967); *see also McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982) ("[N]either party waives the right to a full trial on the merits by filing its own motion.").  However, when cross-motions for summary judgment demonstrate a basic

agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non existence of a factual dispute." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).

## DISCUSSION

**I.  Causes of Action.**

Haskins asserts two causes of action against Baylis.  In Count One, Haskins alleges that Baylis breached their partnership agreement by "refusing to take appropriate partnership action such that the dogs could be used for breeding, and/or sold for their fair market value, as well as other breaches of their agreement."  (Haskins Compl. ¶ 2.)  The relief sought in connection with this count includes: $50,000 plus costs and attorney's fees and an order that Baylis specifically perform his obligations under the partnership agreement by, for example, signing registration papers with respect to certain dogs.  (*Id.*)  In Count Two, Haskins again requests the relief sought in Count One and also demands a "declaratory judgment that the dogs be registered by the American Kennel Club, Inc., upon proof proper that they are entitled to registration as a matter of fact."  (*Id.* at ¶ 6.[3])

Baylis asserts three causes of action against Haskins.  In Count One, Baylis seeks $4,000,000 plus interest and costs for false and defamatory statements published by Haskins.  (*See* Am. Counter-Compl. ¶¶ 21-32.)  In Count Two, Baylis alleges that Haskins breached their partnership agreement by "forg[ing] Baylis's signature on an AKC registration certificate which she then sent to the AKC for the purpose of transferring ownership of a certain Australian Shepherd dog."  (*Id.* at ¶ 42.)   The relief sought in connection with this count includes: (a)

---

[3]  Haskins misnumbered the paragraphs in Count II of her Complaint.  This Opinion refers to these paragraphs by their correct number.

$1,000,000 in punitive damages, (b) dissolution of the partnership, (c) an order awarding Baylis ownership of all dogs that are presently co-owned by Baylis and Haskins, and (d) an order requiring that Haskins cooperate and not interfere with the re-registration of the dogs.  (*Id*. at ¶ 52.)  In Count Three, Baylis alleges that Haskins invaded Baylis' privacy by forging his signature and repeats the relief sought in Count Two.  (*Id*. at ¶¶ 53-59.)

The parties dispute ownership with respect to approximately eleven dogs, including eight female Australian Shepherds, two male Australian Shepherds, and one female Chinese Crested.  (*See* Baylis Mem. Supp. Summ. J. p. 29.)  Although unclear, the record suggests that these dogs include: Ch Bayshore's Dance Fever ("Fever");[4] Bayshore's Sit'n on a Goldmine ("Apollo"); Bayshore's Caught on Camera ("Camay"); Bayshore's Shenanigans ("Nan"); Bayshore's See Rock City ("See Rock City"); Bayshore's Ice Capade ("Flurry"); Bayshore's Butter Me Up ("Butter"); and Bayshore's Beverly Hills ("Beverly Hill").[5]  Ownership with respect to at least three dogs—Bayshore's Chit Chat ("Asia"); Bayshore's Good News Trav'ls Fast ("Traveler"); and Bayshore's Sara Lee ("Sara Lee")—is no longer at issue.[6]

## II.   Cross-Motions for Summary Judgment.

The parties' cross-motions for summary judgment raise jurisdictional and substantive issues.  For example, Haskins invokes Fed. R. Civ. P. 56 to establish that there is no genuine

---

[4]   Pedigree dogs have official names for registration purposes with the AKC and nicknames or call names.

[5]   (*See* Baylis Mem. Supp. Summ. J. p. 11 (listing dogs that Baylis and Haskins co-owned in early 2004); Haskins Mem. Supp. Summ. J. Ex. 2, p. 199 (discussing Fever and Apollo); p. 201 (discussing Camay, Nan, See Rock City, and Flurry); p. 202 (discussing Butter and Beverly Hill).)

[6]   On November 10, 2004, the parties agreed that Haskins would deliver Asia, Traveler, and Sara Lee to Baylis.  (*See* Baylis Mem. Supp. Summ. J. Ex. 21.)

dispute that the damages in this case cannot satisfy the minimum amount in controversy required by 28 U.S.C. § 1332(a), which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  Accordingly, Haskins requests that this Court dismiss each of the causes of action asserted in Baylis' Counter-Complaint.  (*See* Haskins Mem. Supp. Summ. J. p. 5.)

Baylis moves for summary judgment on substantive grounds.  First, Baylis asserts that he is entitled to partial summary judgment with respect to the matter of liability on his "breach of contract claims," leaving the issue of damages for trial.  (*See* Baylis Mem. Supp. Summ. J. p. 33; Baylis Reply p. 2.)  Second, Baylis contends that he is also entitled to a partial summary judgment that Haskins' letter is defamatory *per se*, leaving the issues of actual malice and damages for trial.  (*See* Baylis Mem. Supp. Summ. J. p. 34; Baylis Reply p. 2.)

### A.    Defamation Claim (Count One of Baylis' Counter-Complaint).

Analyzing Baylis' defamation claim resolves a number of the issues raised in the parties' summary judgment motions.  First, certain legal issues and genuine disputes of material fact prevent this Court from finding that statements made in Haskins' letter constitute defamation *per se*.  As a result, this Court denies Baylis' motion for partial summary judgment with respect to that limited issue.  Second, if the trier of fact credits Baylis' version of events at trial, it is possible that his defamation claim could give rise to damages in excess of $75,000.  As a result, this Court cannot conclude to a legal certainty that Baylis' claims fail to satisfy the minimum amount in controversy required by 28 U.S.C. § 1332(a) and thus denies Haskins' motion for summary judgment.

The standard for evaluating defamation claims in Maryland is well-established:

> Under Maryland law, a defamatory statement is one that tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person. To establish a *prima facie* case of defamation when the plaintiff is not a public figure, the plaintiff must prove: (1) that the defendant made a defamatory communication to a third person; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm. The "fault" element of the calculus may be based either on negligence or actual malice. As we explained in *Shapiro*, 661 A.2d 202, actual malice "is established when the plaintiff shows, by clear and convincing evidence, that the defendant published the statement in issue either with reckless disregard for its truth or with actual knowledge of its falsity." On the other hand, negligence need only be shown by a preponderance of the evidence.

*Samuels v. Tschechtelin*, 763 A.2d 209, 241-42 (Md. Ct. Spec. App. 2000) (citations and quotation marks omitted).[7]

The statements at issue here are contained in a letter that Haskins addressed to Baylis on University of Delaware, Department of Psychology letterhead. The letter provides:

> What I see from here is a person that is not happy, who has no peace at all in his life . . . strained, to the point of breaking, relationships with the people closest to you. . . . I truly believe "once an addict always an addict," because I am one. I know that you have just substituted prescription drugs for alcohol. You were in AA long enough to know that the end result of an untreated addiction is death or prison — a lonely prison of your own making. . . . I'm scared you're killing yourself, destroying everything of value in the process. If I didn't care about you, this letter would only be about the dogs. Right now my biggest concern is you. Bottom line — admitting the pills are a problem and your life is unmanageable is the first step.

(Haskins Mem. Supp. Summ. J., attached as unmarked exhibit, pp. 1-2.) Haskins does not

---

[7] The parties appear to agree that, with respect to Baylis' defamation claim, it does not matter whether the law of the State of Maryland, or law from another State, is applicable. (*See* Baylis Mem. Supp. J. p. 35 ("Both Virginia and North Carolina, where the letter was also published and caused harm, recognize a similar distinction between defamation *per se* and defamation *per quod*."); Haskins Reply p. 16 (noting but not contesting "that both Virginia and North Carolina where the letter was published recognize *per se* defamation").)

dispute that she published this letter to the following five individuals: Jeff Margeson; Chris Dale; Peggy Faith; Debbie Mills; and Chris Strom. (*Id*. at 1.)

As a preliminary matter, this Court must address two issues: (1) whether Haskins' letter constitutes defamation *per se* or defamation *per quod*; and (2) whether Baylis is a public figure for defamation purposes. The distinction between defamation *per se* and defamation *per quod* is as follows:

> In the case of words or conduct actionable *per se*, their injurious character is a self-evident fact of common knowledge of which the court takes judicial notice and need not be pleaded or proved. In the case of words or conduct actionable only *per quod*, the injurious effect must be established by allegations and proof of special damage and in such cases it is not only necessary to plead and show that the words or actions were defamatory, but it must also appear that such words or conduct caused actual damage.

*M & S Furniture Sales Co. v. Edward J. DeBartolo Corp.*, 241 A.2d 126, 128 (Md. 1968); *accord Metromedia, Inc. v. Hillman*, 400 A.2d 1117, 1119 (Md. 1979). Whether an alleged defamatory statement is *per se* or *per quod* is a question of law for the court. *See*, *e.g.*, *Tschechtelin*, 763 A.2d at 244-45 (citations omitted).[8]

In this case, the statements made in Haskins' letter suggest that Baylis' addiction to prescription drugs is destroying everything of value in his life, including his relationships with other people. If true, these assertions—which were allegedly made to an employee of the AKC—suggest that Baylis is incapable or unfit to fulfill the obligations of breeding and showing purebred dogs. *Cf. Leese v. Baltimore County*, 497 A.2d 159, 175 (Md. Ct. Spec. App. 1985)

---

[8] Where a statement is defamatory *per se*, and the plaintiff demonstrates by clear and convincing evidence that it was made with actual malice, a "presumption of harm to reputation . . . arises from the publication of words actionable *per se*. A trier of fact is not constitutionally barred from awarding damages based on that presumption in [an actual] malice case." *Hanlon v. Davis*, 545 A.2d 72, 80-81 (Md. Ct. Spec. App. 1988) (citation omitted).

(noting that statements are defamatory *per se* when "if true, [they] would disqualify him or render him less fit properly to fulfill the duties incident to the special character assumed.") (citations omitted).[9] The present posture of this case, however, prevents this Court from finding that Haskins' statements constitute defamation *per se*. First, although truth is a defense to a defamation action, the parties have neither analyzed the statements at issue in terms of the distinction between fact and opinion nor addressed whether the truth or falsity of those statements is assessed subjectively, based on the personal standards and expectations of Haskins, or objectively. *Cf. Tschechtelin*, 763 A.2d at 243-44 & 247. Second, the record indicates a number of significant factual disputes with respect to the truth or falsity of statements made in Haskins' letter.[10] As a result, this Court cannot conclude that those statements constitute defamation *per se*. Accordingly, Baylis' motion for entry of partial summary judgment with respect to the issue of defamation *per se* is DENIED.

There is no basis for treating Baylis as a public figure for defamation purposes. The Supreme Court has explained that

> [the] designation of a person as a public figure may rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all concepts. More commonly, an individual

---

[9] *See also Schneider v. Green*, No. 88-2931, 1990 WL 151142, *18, 1990 U.S. Dist. LEXIS 12871, *57 (S.D.N.Y. 1990) (applying New York law) (analyzing defamation claim in the context of "the bearded collie community . . . [which] is a small and intimate one in which business dealings are based, in large part, on trust and honesty.").

[10] (*Compare* Baylis Mem. Supp. Summ. J. p. 41 (reciting Haskins' deposition testimony that, *e.g.*, "perhaps" people with clinical depression should take prescription drugs "if that's what their doctor recommends and Haskins has no training in the treatment of addictions) *with* Haskins Reply pp. 18-19 (indicating that Haskins knew that Baylis would sometimes take other people's prescription drugs and that all the people who received Haskins' letter had "very volatile dealings with Baylis at that time"); *see also* Baylis Mem. Supp. Summ. J. Ex. 31, pp. 143-44 & 150.)

> voluntarily injects himself or is drawn into a particular public
> controversy and thereby becomes a public figure for a limited range
> of issues. In either case such persons assume special prominence in
> the resolution of public questions.

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). Without citing any authority, Haskins argues that "Baylis is a *public figure* extremely well known in the dog world."[11] (Haskins Reply p. 18 (emphasis in original).) This case does not involve, however, the type of public figure status contemplated by *Gertz*. There is no evidence or allegation that Baylis is sufficiently famous or notorious to be treated as a public figure for all purposes. Similarly, there is no evidence or allegation that Baylis has assumed any special prominence with respect to any public controversy that he might be considered a public figure for a limited purpose. Baylis may be well known in the small world associated with breeding and showing purebred dogs, but that does not make him a public figure for defamation purposes. *See*, *e.g.*, *Time, Inc. v. Firestone*, 424 U.S. 448, 453 (1976) ("Respondent did not assume any role of especial prominence in the affairs of society, other than perhaps Palm Beach society, and she did not thrust herself to the forefront of any particular public controversy in order to influence the resolution of the issues involved in it."); *see also St. Luke's Evangelical Lutheran Church v. Smith*, 537 A.2d 1196, 1203-04 (Md. Ct. Spec. App. 1988) (participant in community affairs, *e.g.*, associate director of church ministry, is not a public figure absent clear evidence of general fame or notoriety), *rev'd in part on other grounds*, 568 A.2d 35 (Md. 1990).

In this case, there are genuine disputes of material fact with respect to whether Haskins published her letter with negligence or actual malice and damages resulting from the alleged

---

[11] In a defamation cause of action where the plaintiff is a public figure, the plaintiff must prove, by clear and convincing evidence, that the defendant made the allegedly defamatory statements with malice.

defamation.[12]  For example, Baylis contends that actual malice can be inferred in part from Haskins' decision to "sen[d] the letter to at least one person who is a long-time adversary of Baylis, and, most egregiously, to Chris Strom, an AKC employee, who testified that she knows Baylis only in her professional capacity."  (Baylis Mem. Supp. Summ. J. p. 42.)  In contrast, Haskins maintains that the evidence supports the inference that "[i]t was not unreasonable for Haskins to think what she did, or to try to intervene about it."  (Haskins Reply p. 19.)  Similarly, with respect to damages, Baylis contends that "he has been unable to secure backers for two of his dogs this year (he has two, down from four each of the last two years) which represents a loss to him of at least $250,000 in backer funds."  (Baylis Mem. Supp. Summ. J. p. 40.)  In response, Haskins points out that Baylis has failed to forecast any evidence establishing a causal connection between Haskins' letter and Baylis' alleged loss of two backers for his dogs.  (*See* Haskins Reply p. 11.)

Although Baylis does not appear to respond to Haskins' contention that there is no evidence that would establish a connection between her letter and the harm allegedly suffered by Baylis, this Court cannot conclude "to a legal certainty" that Baylis will be unable to prove damages arising from his defamation claim.[13]  The reason is that "as a matter of Maryland law,

---

[12]     Actual malice "is established when the plaintiff shows, by clear and convincing evidence, that the defendant published the statement in issue either with reckless disregard for its truth or with actual knowledge of its falsity." *Shapiro v. Massengill*, 661 A.2d 202, 217 (Md. Ct. Spec. App. 1995) (citation omitted).  Negligence, however, "need only be shown by a preponderance of the evidence." *Id*.

[13]     *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.") (citations omitted).

the presumption of harm to reputation still arises from the publication of words actionable *per se*. A trier of fact is not constitutionally barred from awarding damages based on that presumption in a constitutional malice case." *Hearst Corp. v. Hughes*, 466 A.2d 486, 493 (Md. 1983). As a result, if the trier of facts credits Baylis' version of the facts and inferences related to the issues of, *e.g.*, the truth and falsity of statements made in Haskins' letter and whether those statements were made with actual malice, it is possible that Baylis may recover at trial an amount equal to the minimum amount in controversy under 28 U.S.C. § 1332(a). *Cf. Shabazz v. Bob Evans Farms, Inc.*, 881 A.2d 1212, 1234 (Md. Ct. Spec. App. 2005) (noting that, in an appropriate case, nominal compensatory damages may be sufficient to support punitive damages). Accordingly, Haskins' Motion for Summary Judgment is DENIED.[14]

### B.     Breach of Contract Claims (Counts Two and Three of Baylis' Counter-Complaint).

Genuine disputes of material fact also prevent this Court from granting Baylis' request for partial summary judgment on the issue of breach with respect to Baylis' "breach of contract" claims.[15] For example, Baylis contends that Haskins' forgery of Baylis' name on AKC papers

---

[14]     This Court notes the unusual posture of Haskins' Motion for Summary Judgment. In a typical case, the jurisdictional issues raised by Haskins would be determined as of the filing of, and on the face of, the complaint (in an action initially filed in federal court) and at the time of removal (in an action filed in state court and removed to federal court). In this case, Haskins did not raise any jurisdictional objections to removal until after the completion of discovery.

[15]     This Court notes that Counts Two and Three of Baylis' Amended Counter-Complaint do not appear to contain "breach of contract" claims. Count Two asserts that Haskins breached her *partnership agreement* with Baylis by "forg[ing] Baylis's signature on an AKC registration certificate which she then sent to the AKC for the purpose of transferring ownership of a certain Australian Shepherd dog." (Am. Counter-Comp. ¶ 42.) Count Three alleges that Baylis *invaded Baylis' privacy* by forging his signature. (*Id*. at ¶¶ 53-59.)

constitutes "a breach of the duty that Haskins owed to Baylis."[16]  (Baylis Mem. Supp. Summ. J. p. 33.)  In contrast, Haskins contends that her forgery of Baylis' name was "authorized" and is therefore "not *wrongful* against Baylis."[17]  (Haskins Reply p. 4 (emphasis in original).)  This is a material issue of genuine fact.  As a result, Baylis' Motion for Summary Judgment on the issue of breach with respect to Counts Two and Three of his Amended Counter-Complaint is DENIED.

### III.     Motion to Strike.

Baylis moves to strike Haskins' letter-pleading dated January 9, 2006.  The basis for striking this material is that it constitutes an unauthorized sur-reply in violation of Local Rule 105-2(c) (setting forth filing schedule where more than one party plans to file summary judgment motions).  This Court, however, has resolved the parties' Cross-Motions for Summary Judgment without considering the exhibits or representations that Baylis seeks to strike.  *See* DISCUSSION §§ I-II, *supra*.  Accordingly, Defendant's Motion to Strike is DENIED as moot.

### CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Cross-Motion for Summary Judgment is DENIED, and Defendant's Motion to

---

[16]     Baylis argues in his summary judgment papers that Haskins' unauthorized spaying of a dog, and unauthorized buyback of an interest in a dog are independent instances of a breach of the duty that Haskins owed Baylis. (*See* Baylis Mem. Supp. Summ. J. pp. 31-33.) These allegations, however, are simply not contained in Baylis' Amended Counter-Complaint. (*See* Am. Counter-Comp. ¶¶ 33-52 (Count Two) & ¶¶ 53-59 (Count Three).)

[17]     (*See* Baylis Mem. Supp. Summ. J. Ex. 31, pp. 55-61 (deposition testimony from Haskins indicating that Baylis authorized her to sign AKC papers on his behalf).)

Strike is DENIED as moot. As a result, this case will proceed to trial without a jury on all counts. A separate Order follows.

Dated: June 7, 2006                                            /s/                                                        
                                                               Richard D. Bennett
                                                               United States District Judge